```
     J7aWfriA
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4           v.                                19 Cr. 450 (PGG)
5  JAMIE FRIERSON,
6                  Defendant.
                                              Arraignment
7  ------------------------------x
8                                              New York, N.Y.
                                               July 10, 2019
9                                              3:00 p.m.

10 Before:
11
                       HON. PAUL G. GARDEPHE,
12
                                              District Judge
13
                              APPEARANCES
14
   GEOFFREY S. BERMAN
15       United States Attorney for the
         Southern District of New York
16 BY:  SEBASTIAN A. SWETT
        ALINE R. FLODR
17      Assistant United States Attorneys

18 DAVID E. PATTON
        Federal Defenders of New York, Inc.
19      Attorney for Defendant
   BY:  CHRISTOPHER A. FLOOD
20      Assistant Federal Defender

21
22
23
24
25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

1               (Case called)
2               MR. SWETT:  Good afternoon, your Honor.  Sheb Swett
3     and Aline Flodr, for the United States, joined at counsel table
4     by Michael Avi-Yonah, who is interning in our office this
5     summer.
6               MR. FLOOD:  Your Honor, good afternoon.  Christopher
7     Flood, Federal Defenders of New York, on behalf of Mr.
8     Frierson, who is present, standing at defense table.
9               Your Honor, I'd ask that Mr. Frierson be allowed to
10    sit through these proceedings.  He's quite ill.
11              THE COURT:  OK.
12              MR. FLOOD:  Thank you.
13              THE COURT:  We're here for purposes of arraigning
14    Mr. Frierson on the indictment.
15              Mr. Frierson, you're here with Mr. Flood as your
16    attorney this afternoon, is that correct?
17              THE DEFENDANT:  Yes, sir.
18              THE COURT:  Have you received a copy of the
19    indictment --
20              THE DEFENDANT:  Yes.
21              THE COURT:  -- which reflects the charges against you?
22              THE DEFENDANT:  Yes, I have.
23              THE COURT:  And have you had a chance to discuss the
24    charges with Mr. Flood?
25              THE DEFENDANT:  Yes, briefly.

J7aWfriA

1    THE COURT:  Count One of the indictment charges that
2 on May 8, 2019, you entered an Apple Bank branch located in the
3 vicinity of 120 East Fordham Road in the Bronx, and you
4 demanded that the bank employee there turn over to you certain
5 moneys in the bank's custody, and you did so with threats of
6 violence.
7    Count Two says that on or about May 9, 2019, at an
8 Apple Bank branch located in the vicinity of 44 East 161st
9 Street in the Bronx, you demanded that a bank employee turn
10 over to you the money in the bank's custody and that you did so
11 using threats of violence.
12    You're charged, in essence, with bank robbery in Count
13 One and Count Two, and those are the circumstances.
14    Do you understand those are the charges against you?
15    THE DEFENDANT:  Yes, sir.
16    THE COURT:  Do you wish me to read the charges to you
17 now here in open court?
18    THE DEFENDANT:  No.  No, sir.
19    THE COURT:  Then I'll ask you now, how do you plead as
20 to Count One; guilty or not guilty?
21    THE DEFENDANT:  Not guilty, sir.
22    THE COURT:  And how do you plead as to Count Two;
23 guilty or not guilty?
24    THE DEFENDANT:  Not guilty, your Honor.
25    THE COURT:  All right.

1    Mr. Swett, can you give me a sense of what the
2    discovery in the case is going to look like.
3    MR. SWETT:  Your Honor, the discovery has been
4    produced.  The government turned over a nearly full set of
5    discovery on June 25, 2019.  It consists of surveillance
6    footage from the banks.  It consists of NYPD reports.  There
7    was one identification after the first robbery.  NYPD officers
8    and members of the violent crimes task force showed a still
9    image from the bank robbery to Mr. Frierson's sister, and she
10   identified him.  A report of that identification has been
11   turned over.  There has been fingerprint analysis of the demand
12   notes, which have matched with Mr. Frierson's.  Those have also
13   been turned over.  We have not yet turned over the backups.
14   The lab that conducts the analysis has sort of the full
15   analysis, and it's somewhat voluminous.  We don't have that,
16   but we have given them the positive fingerprint hits.
17   And then there was surveillance footage taken from the
18   subway near one of the banks showing the defendant in the
19   subway at the time of the robbery.  We have produced still
20   images from that surveillance footage, but we do not have the
21   full video yet.
22   Other than those two items, all discovery has been
23   turned over.
24   THE COURT:  I take it there were no postarrest
25   statements.

MR. SWETT:  No postarrest statements, your Honor.  No search warrants.

THE COURT:  All right.

Mr. Flood, what are your views on when we should meet again?

MR. FLOOD:  Your Honor, I think there's a couple competing factors.  First, I would normally just ask for 30 days.  It doesn't sound like it's complicated in terms of the type of discovery, although I could imagine a *Daubert* issue could arise on the fingerprints, depending -- I would probably need to see that whole file or I guess what the government called the backup.  But the more pressing issue is that Mr. Frierson's currently undergoing what is his third round of chemotherapy, and he gets it, like, every two weeks.  And he expects, his understanding from discussion with medical staff is that he has three more to go.

As the Court, I'm sure, is aware, this was indicted some time ago.  We've been waiving time before this arraignment, and it's exclusively about that, about his medical treatment.  He's at Kingsbrook hospital in Brooklyn receiving that treatment where I see him.  There is some complexity, however, because he can't receive mail there.

THE COURT:  I'm sorry?

MR. FLOOD:  He can't receive mail at the hospital.  It gets forwarded from the MDC, and nothing they send just ever

1    arrives there.  So, the 30-day clock, I would really be asking

2    for closer to 60 days, realistically.  But by then we should be

3    able to know where to go from there.

4            THE COURT:  All right.

5            MR. SWETT:  Your Honor, may I just briefly be heard?

6            The government would oppose a 60-day deadline.  We

7    would like this case to move forward.

8            Just by way of background, Mr. Frierson was charged

9    and convicted in the Southern District of New York for

10   committing five bank robberies and attempted bank robberies

11   after a trial.  He was sentenced in early May.  I think it was

12   May 1, 2019.  He received a sentence of time served with no

13   supervised release, and about eight or nine days later, he

14   committed the instant offenses.

15           The discovery is really hardly anything.  I mean there

16   may be a *Daubert* motion, but it's very straightforward.  We

17   have told Mr. Frierson, through his counsel, that the offer is

18   he can plead to the indictment or he can go to trial, and we

19   would like to know one way or the other which one it is.  So,

20   with all due respect to the medical issues and the complexity

21   that that presents, we would ask that this case move

22   expeditiously forward.

23           We would ask for a motion schedule today even, but at

24   a minimum, if the Court is going to set a new conference date,

25   we would ask for less than 60 days, and 30 seems like more than

1    enough time since defense counsel has had discovery for about
2    three weeks now.
3            MR. FLOOD:  Your Honor, as the government is aware,
4    they may have produced discovery, it's not made it to my desk.
5    We're changing -- we're moving in our offices, so I actually
6    have not seen what they produced.
7            THE COURT:  I'm sorry.  The Federal Defenders have
8    moved; is that what you're saying?
9            MR. FLOOD:  We opened up an additional floor, and it's
10   a lot of internal movement amongst lawyers and staff going to
11   different offices, and that's basically what I'm dealing with,
12   in the middle of it.  That's not some great excuse, just
13   explanation of what's going on.  But the reality is it's about
14   the communication with Mr. Frierson.  I cannot call him.  I
15   cannot send him letters.  I have to go to Kingsbrook hospital,
16   which takes at least half a day every time.
17           THE COURT:  Where is Kingsbrook hospital located?
18           MR. FLOOD:  I can't give the Court the address, but
19   it's on the far side of Crown Heights, and it's about a
20   45-minute cab ride.
21           THE COURT:  And I take it from what you've said
22   that -- well, let me step back.
23           The chemotherapy treatments, I think, you told me were
24   every two weeks, right?
25           MR. FLOOD:  He gets it every two weeks, but he resides

1   at Kingsbrook while that's ongoing.
2           THE COURT:  So, he's inpatient.
3           MR. FLOOD:  That's right.  That's right, and he has
4   stage 4 colorectal cancer that's metastasized.  He was
5   diagnosed in September of last year, quite honestly, a very
6   serious health condition.  And he should know at the last of
7   these three treatments whether this round of chemo is having
8   any effect, but the prior two had none.
9           THE COURT:  Just so I'm clear, I think you said,
10  Mr. Swett, did he plead guilty in the other case?
11          MR. SWETT:  No, your Honor.  The case went to trial.
12          THE COURT:  He was convicted, and he got no sentence
13  and he got no supervised release.
14          MR. SWETT:  Correct, your Honor.
15          THE COURT:  And then he, according to the government,
16  went out and committed other bank robberies.  Right?
17          MR. SWETT:  Yes, your Honor.
18          THE COURT:  Mr. Flood, when will these three
19  treatments be over?
20          MR. FLOOD:  We understand it will be six weeks from
21  now that the last of the treatments will be administered and
22  may very well be -- like, I don't have the specifics.  It's not
23  like it's today, six weeks from today, but by six weeks it
24  should be complete.  And again, I'm happy to work within the
25  Court's framework, but in terms of making decisions whether or

1  not to pursue motions, whether to plead, that's quite a bit of
2  counseling, and that means multiple days at a place that it's
3  very hard to schedule to get out to.
4              THE COURT:  Well, let me say this.  I certainly
5  understand the government's frustration, and I'm sympathetic to
6  their frustration.  However, we are dealing with a man who is
7  undergoing inpatient chemotherapy, and the circumstances are
8  such that it's going to be difficult for Mr. Flood to spend
9  substantial amounts of time with Mr. Frierson while he's
10 inpatient at the hospital, and I'm sure Mr. Flood has other
11 clients that he has to represent and other responsibilities
12 that he has to fulfill.  Under the circumstances, I am going to
13 grant an adjournment longer than what the government wants.
14 Understanding that chemotherapy is going to take about another
15 six weeks, that would bring us to August 21, so what I'm going
16 to do is put the case down for conference sometime during the
17 week of August 26.
18             MR. FLOOD:  Very good.
19             THE COURT:  Mike, maybe towards the middle of the week
20 of August 26.
21             THE DEPUTY CLERK:  Wednesday, the 28th, 10 in the
22 morning is available, your Honor.
23             THE COURT:  10 in the morning?
24             THE DEPUTY CLERK:  Yes, your Honor.
25             THE COURT:  Is that convenient for everyone, August

J7aWfriA

1  28, 10 a.m.?
2           MR. FLOOD:  Works, your Honor.
3           MR. SWETT:  Yes, your Honor.
4           THE COURT:  Does the government wish to exclude time
5  between then and now?
6           MR. SWETT:  Yes, your Honor.
7           THE COURT:  Any objection, Mr. Flood?
8           MR. FLOOD:  No, your Honor.
9           THE COURT:  I will exclude time between today and
10 August 28, 2019, under the Speedy Trial Act, pursuant to Title
11 18, United States Code, Section 3161(h)(7)(a) to permit
12 Mr. Flood to review the discovery materials with his client and
13 determine whether there will be any pretrial motions.  I do
14 find that the ends of justice served by the granting of this
15 continuance outweigh the best interests of the public and the
16 defendant in a speedy trial.
17          Is there anything else?
18          MR. SWETT:  No.  Thank you, your Honor.
19          MR. FLOOD:  No, your Honor.  Thank you.
20          (Adjourned)
21
22
23
24
25